**Larry Ray MITCHELL, Plaintiff,**

v.

**Gary T. DIXON, et al., Defendants.**

**No. 92–825–CRT–BR.**

United States District Court,
E.D. North Carolina,
Raleigh Division.

Aug. 18, 1994.

---

Michael S. Hamden, N.C. Prisoner Legal Services, Raleigh, NC, for Larry Ray Mitchell.

James Peeler Smith, N.C. Dept. of Justice, Raleigh, NC, for Gary T. Dixon, J.E. Strickland, John W. Acree, V. Lee Bounds and Lillie Mae Brown.

Lorie C. Pretzel, Raleigh, NC, for L.C. Brown, Jr.

### ORDER

BRITT, District Judge.

This matter is before the court on motion by plaintiff seeking an order of the court directing defendants to allow his counsel to have a "contact" visit with plaintiff. The matter has been fully briefed and is ready for ruling.

This is a civil rights action instituted by plaintiff, an inmate in the North Carolina Department of Corrections, against defendants, prison officials, alleging sexual harassment. The action was filed by plaintiff *pro se* but he is now represented by North Carolina Prisoner Legal Services, Inc. (NCPLS). Defendants Dixon, Strickland and Acree[1] have filed a motion to dismiss or, in the alternative, for summary judgment. Plaintiff has obtained additional time within which to respond to that motion and has filed the present motion contending that it is necessary for counsel to have a "contact" visit with plaintiff before he can properly respond to the motion. Counsel argues that such a visit is necessary to "allow[ ] counsel and plaintiff to pass papers, study documents and cases, and freely exchange information." In opposing the motion defendants have attached the affidavit of Sherwood R. McCabe, Manager of Support Services at Central Prison where plaintiff is located, who is responsible for visitation at the prison.

### I

Central Prison is the only maximum security facility in North Carolina's prison system and it also operates as a support institution for the entire prison system. Housed there are death row inmates and inmates who are in maximum custody, long-term and short-term administrative segregation, protective custody and regular custody.[2] The prison also has a hospital and mental health facility. The daily population varies from 1050 to 1100 inmates.

Contact visitation is strictly prohibited at Central Prison to prevent the smuggling of contraband into the facility and for the safety, security and well-being of visitors, staff and inmates. The *only* exceptions to the policy are for court-ordered psychological evaluations, execution-eve visitations to death row inmates by attorneys and family, and visits to hospital patients who are physically incapable of going to the Visiting Center.

Inmates are permitted non-contact visits with their attorneys in private booths separated by a window with a mesh-covered opening which permits conversation. Conversations between inmates and their counsel are recognized as confidential and are not monitored in any way. When necessary, prison staff pass written documents between the inmate and counsel. Where large numbers of documents are involved counsel are encouraged to provide a copy for the inmate so that each will have a copy of the document being discussed.

### II

At issue is whether an inmate has a constitutional right to have a contact visit with counsel. The Ninth Circuit has recognized such a right as a part of the right to meaningful access to the courts, *Ching v. Lewis*, 895 F.2d 608 (9th Cir.1990), but the Fourth Circuit has not. The court need not decide this issue, however, as there can be no doubt that if such a right does exist it is subject to reasonable regulation. *Cf. Ching*, 895 F.2d at 609 (finding that prisoner had right to contact visitation with counsel, and noting that prison officials had "failed to give any justification" for their "apparently arbitrary policy" that could support the regulation as reasonable).

---

1. The clerk has entered the default of the only other defendant, Lillie Mae Brown.

2. Plaintiff is a maximum custody inmate serving a fifty-year sentence for second degree murder.

The Supreme Court, in *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), found that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89, 107 S.Ct. at 2261. The Court identified four factors as "relevant in determining the reasonableness of the regulation at issue." *Id.* First, the Court explained, "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward" to justify it. *Id.* Second, the court must determine "whether there are alternative means of exercising the right that remain open to prison inmates." *Id.* at 90, 107 S.Ct. at 2262. Third, the court must assess the "impact [that] accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Id.* And finally, the "absence of ready alternatives is evidence of the reasonableness of the regulation." *Id.*

The regulation at issue satisfies the requirements of the test. The State of North Carolina has a legitimate governmental interest in preventing inmates from escaping from custody and protecting those who must regularly deal with them, which includes prison personnel, other inmates, and lawyers, among others. There exists a valid, rational connection between the regulation and this interest. Contact visits pose too great a risk for contraband to be smuggled into the prison to be regularly permitted. Such contraband could aid in an escape or the commission of other crimes within and outside of the prison. The lives and safety of other inmates and correctional staff could be put in jeopardy. Contact visits also pose the risk of visitors—even attorneys—being taken hostage.

There are, of course, alternative means of permitting contact visits. However, the cost, in terms of personnel and facilities and the procedures that would be required, are too high, especially when compared to the alternative that is available and presently afforded. If contact visits were allowed, both the inmate and the attorney would have to be searched before and after the visit to reduce the possibility of contraband entering the prison. Providing a separate area for attorney visitation would require the assignment of additional personnel to that area. Visitation with some extremely dangerous inmates could not be permitted, even with the attorney's consent. Thus, the impact on personnel and resources is too high.

The current regulation accommodates the prisoner's right to a visit with his counsel at a reasonable cost to the prison. The willingness of prison authorities to pass copies of documents between counsel and inmate fully accommodates any reasonable desire to be able to have access to the same document at the time of a conversation. Counsel for plaintiff has failed to show why this method is not acceptable other than his "professional judgment" that a contact visit is necessary, and it is apparent that the cost of accommodating plaintiff's request would be excessive.

### III

Prison authorities are responsible for the security and safety of inmates and visitors alike, even in the facilities where the most dangerous inmates are kept. They are afforded wide latitude in carrying out that responsibility. The regulation at issue is valid and provides a reasonable method of meeting that duty. The motion for a contact visit is DENIED.